**J. Michael DAVID, Appellant,**

v.

**BACHE HALSEY STUART SHIELDS, INC., Appellee.**

**No. 01–81–0781–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 4, 1982.

Charles A. Gall, Jenkins & Gilchrist, Dallas, Frank Pinedo, David Beale, Pinedo, Cezeaux & Hughes, Houston, for appellant.

Foreman & Dyess, Nancy S. Polis, Houston, for appellee.

Before WARREN, DUGGAN and PRICE, JJ.

PRICE, Justice.

This an appeal from an order granting a temporary injunction enjoining appellant from engaging in the securities business in and around Harris County, Texas.

Appellant, Michael David, went to work on August 1, 1979 for appellee, Bache Halsey Stuart Shields, Incorporated (Bache). He signed an employment contract that contained the following covenant:

> Not to accept employment in a sales or sales trainee capacity with a firm engaged in the securities and/or commodity brokerage business anywhere within the territories specifically delineated and described as follows: The City of Houston, County of Harris, State of Texas, and the territory adjacent to and surrounding each of such counties for a distance of twenty-five (25) miles in every direction from the boundaries of such county within one hundred and eighty (180) days after employee voluntarily terminates his employment at Bache. . . .

During his employment, appellant received extensive and costly training in the area of securities brokerage, commodities, and specifically, in sales. Appellant received certain confidential information during his employment with Bache concerning customer lists, marketing techniques, investment strategy and the Bache commission schedules. It was stipulated that upon his termination with Bache on September 11, 1981, appellant immediately went to work for Shearson American Express (Shearson), performing the same type of sales work that he performed at Bache. It was further stipulated that the appellant had taken with him Bache's customer lists. Appellant contacted from 75 to 119 of these customers, causing some of Bache's former customers to begin doing their securities business with Shearson. Due to this, appellee filed this suit and sought a temporary injunction preventing appellant from violating the covenant not to compete.

Findings of fact and conclusions of law were neither requested nor filed.

In points of error one, four, six, and seven, the appellant is asserting that the trial court judge abused his discretion in granting the temporary injunction for the following reasons:

1) appellee failed to show it had no adequate legal remedy or that it would suffer irreparable harm,

2) that the harm to the appellant as a result of the injunction greatly outweighs any harm to the appellee,

3) appellee failed to sustain its burden of showing the reasonable necessity of the restraint, and

4) the remedy enjoins appellant from more than is reasonably necessary to protect appellee.

In a hearing on an application for a temporary injunction, the applicant, to be entitled to the issuance of a writ, must plead a cause of action and show a probable right on final trial to the relief he seeks and probable injury in the interim. *Sun Oil Company v. Whitaker*, 424 S.W.2d 216 (Tex. 1968); *Millwright Local Union No. 2484 v. Rust Engineering Co.*, 433 S.W.2d 683, 686 (Tex.1968); *Drever and Associates v. Batey*, 572 S.W.2d 30 (Tex.Civ.App.—Houston [1st Dist.] 1978), aff'd and reformed, 576 S.W.2d 35 (Tex.1979). The applicant must further show that no adequate legal remedy exists. In order for a legal remedy to be adequate, it must give the applicant complete, final and equal relief. *King v. Miller*, 280 S.W.2d 331 (Tex.Civ.App.1955, writ ref'd n. r. e.); *Drever and Associates v. Batey*, 572 S.W.2d 30, 33 (Tex.Civ.App.—Houston [1st Dist.] 1978), aff'd and reformed, 576 S.W.2d 35 (Tex.1979).

A trial court has great discretion in granting or denying a temporary injunction and its action will not be reversed

unless the appellate courts are convinced that it represents a clear abuse of discretion. *Texas Foundries v. International Moulders and Foundry Workers' Union*, 151 Tex. 239, 248 S.W.2d 460 (1952); *Hartwell's Office World v. Systex Corporation*, 598 S.W.2d 636 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). In determining whether there has been such an abuse of discretion, the Court of Appeals must draw all legitimate inferences from the evidence in the light most favorable to the trial court's judgment. *Smith Protective Services v. Robertson*, 560 S.W.2d 174, 176 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ). *Hartwell's Office World v. Systex Corporation*, 598 S.W.2d 636, 639 (Tex.Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.).

A review of the evidence reveals that Bache showed a probable right to relief on a final hearing. The appellant admitted that he had access to Bache's customer lists containing confidential information regarding the customers' financial assets and preferences in securities. The appellant also had access to confidential information relating to commission schedules, fee schedules, Bache's policies and other confidential communications. The appellant testified that he took copies of this material from Bache's office when he resigned and began to utilize it for his new employer, Shearson. Appellant further testified that he had begun to divert Bache's customers for his new employer.

The record also establishes that there would be probable harm to Bache if the Appellant were allowed to take the confidential customer lists and confidential information and use them in his new employment with Shearson. This harm would not only disrupt the organized business dealings of Bache but would also threaten customer confidence in Bache's handling of their private affairs, and probably cause Bache to lose not only customers but profits as well. The probable injury would also accrue in Bache's loss of a valuable broker both in terms of the reassignment of customers to other brokers with whom they are not familiar and have not established a trust relationship and in Bache's loss of time and money expended in its extensive training of a broker.

■ To demonstrate harm, a party must show a noncompensable injury, for which there can be no real legal measure of damages, or none that can be determined with a sufficient degree of certainty. One cannot assign a dollar value to a company's loss of clientele, good will, office stability, commission schedules, marketing techniques, and investment strategies.

■ Appellant asserts that appellee could not demonstrate precise losses that the company incurred through the actions of the appellant due to appellee's admission that there was no drop in profits in the month after appellant terminated his employment with appellee. However, looking at only the month the appellant quit working for appellee and comparing it to the next month is not conclusive. In securities trading, there are any number of reasons why a loss would not show up the very next month. Market fluctuation and customer activity are two reasons why a loss might not show up. In arguing that any harm the appellee may have sustained is negligible, as the appellant's harm is greater, the appellant fails to recognize two things: First, a court must determine whether the restrictions are reasonably necessary to protect the business and goodwill of the employer; *Weatherford Oil Tool Company v. Campbell*, 161 Tex. 310, 340 S.W.2d 950 (1960); and second, a court must protect the employee by enforcing such restrictions only to the extent that they are reasonable in time and scope. *Justin Belt Company, Inc. v. Yost*, 502 S.W.2d 681 (Tex.1973).

■ The trial court did not, by its order granting a temporary injunction, find the restrictions unreasonable. Appellant has taken and utilized confidential information for the benefit of his new employer. The mere fact appellee is a large national corporation and any harm it sustained is negligible is not a rational argument for denying a temporary injunction. A holding of this nature would preclude any temporary in-

junction from being granted to a large corporation merely due to its size.

The trial court judgment limiting the temporary injunction to 180 days and 25 miles beyond Harris County is reasonable in light of the evidence. The 180-day time constraint was necessary to reestablish contact through another of its agents with its clientele, and the area encompassed by its restriction is that serviced by appellee's office in which appellant was employed.

We overrule points one, four, six, and seven.

In his second point of error, the appellant contends that there was an abuse of discretion in granting the temporary injunction in that appellee allegedly ignored the agreement to arbitrate and thus has unclean hands. Appellant contends that since the New York Stock Exchange (Rule 347) and the Securities Exchanges Act of 1934 provide provisions for arbitration when there is a dispute as to the terms of an employment contract, and since no arbitration was initiated, the appellee has unclean hands. Although arbitration is the authorized and accepted means of settling a dispute, here, the contract stated that if the employee violated the noncompetition provision of the contract after he terminates his employment, the appellees would be entitled to injunctive relief pending an arbitration settlement. The contract, then, is not violative of any provisions set out by the New York Stock Exchange Act of 1934. Appellant points to the failure of appellee to initiate arbitration as evidence of its unclean hands. This argument is not sound. An injunction would be the only method of preserving the *status quo* until such arbitration could be brought and settled. With respect to making a formal demand for arbitration, neither the New York Stock Exchange rules nor the sections of the Securities Exchange Act relied on by the appellant preclude the remedy of an equitable injunction pending arbitration. Based on this, the court did not abuse its discretion in granting a temporary injunction until the arbitration proceedings are concluded. Appellant's second point of error is overruled.

In his third point of error, appellant contends that the trial court abused its discretion in granting a temporary injunction because the undisputed evidence established that appellee breached the contract. Appellant bases this point on the fact that when appellee closed its Town and Country Office, it moved appellant to their Galleria Office. He asserts that this caused hardship and expense to the appellant in terms of his having increased commuting expenses. The appellant relies on cases where an employer's conduct caused such undue hardship on their employee as to warrant a breach of the employment contract. However, none of these cases reflect the facts of the case at hand. Here, there was no reduction in appellant's expense account, no opening of a competing business in the appellant's territory, no increased salesmen in the area, and no reduction in the territory or list of customers. There was merely a move from one office that closed to the nearest office that was opened in the same area of town. Clearly, this does not reflect such an action on the part of the appellee that would constitute a breach of contract. In any event, appellant has waived any assertion of a breach of contract due to the move as he continued to work in the Galleria office for twenty months after the move. Appellant's third point of error is overruled.

In his fifth point of error the appellant asserts that the trial court abused its discretion in granting the temporary injunction because the contract was induced by fraud. Appellant bases this assertion on testimony by the appellant that he was told by Mr. Stettbacher, a representative of appellee, that the contract's duration was for two years. He contends that this induced him to sign the contract. However, Mr. Stettbacher testified that he was not present when the contract was signed.

A situation such as the one in the case at bar is strictly controlled by *Town North National Bank v. Broaddus*, 569 S.W.2d 489 (Tex.1978). There, the Texas Supreme

Court held that the appellant must clearly demonstrate trickery, artifice or device on the part of the appellee before parol evidence can be admitted to vary the terms of a valid contract. If a party to a contract could come forward with such parol evidence and attempt to alter the terms of a clearly written contract, then the binding strength of all contracts would be severely undermined. The trial court apparently relied on the terms of the contract itself to demonstrate the true intent of the parties. Such reliance does not indicate any abuse of discretion.

Appellant's fifth point of error is overruled.

Appellant's eighth point of error asserts that the trial court abused its discretion because the order granting the injunction provides appellee relief not properly requested and beyond that allowed pursuant to the contract between the parties.

The record reflects that appellee requested, through discovery, all material in appellant's possession obtained while he was employed at Bache. The appellant copied customer lists and gave the originals to appellee's attorney. The record reflects that the copies were never turned over to appellees pursuant to discovery. It would have been impossible for appellees to specifically request the copies when appellees were unaware of their existence. The trial court, pursuant to Rule 63 Texas Rules of Civil Procedure, properly allowed a trial amendment to include the lists, and ordered these lists to be returned to appellees in order to effectuate the temporary injunction.

It is also clear that a court may make such orders or issue such writs as are necessary to make its judgment effective. *Baucum v. Texam Oil Corp.*, 423 S.W.2d 434 (Tex.Civ.App.—El Paso 1967, writ ref'd n.r.e.). The temporary injunction would have been meaningless unless those instruments which could cause harm to the appellee, in possession of the appellant, were returned. Consequently, the trial court did not step beyond its discretionary bounds in so ordering.

The eighth point of error is overruled and the trial court's judgment is affirmed.