**CALLER–TIMES PUBLISHING COMPANY, INC.,**
Appellant,

v.

**TRIAD COMMUNICATIONS, INC., d/b/a Wheels & Keels, Appellee.**

No. 13–88–328–CV.

Court of Appeals of Texas, Corpus Christi.

March 18, 1993.

Opinion Granting Rehearing in Part May 13, 1993.

Rehearing Overruled June 7, 1993.

Jorge C. Rangel, Rangel & Chriss, Corpus Christi, Mike A. Hatchell, Ramey & Flock, Tyler, for appellant.

E. Landers Vickery, Arnold Anderson Vickery, Vickery & Kilbride, Houston, for appellee.

Before FEDERICO G. HINOJOSA, Jr., SEERDEN, and DORSEY, JJ.

## OPINION

FEDERICO G. HINOJOSA, Justice.

On remand from the Texas Supreme Court, *Caller–Times Publishing Co. v. Triad Communications, Inc.*, 826 S.W.2d 576 (Tex.1991), we address appellant's points of error which challenge the legal and factual sufficiency of the evidence supporting the jury's finding that appellant tortiously interfered with appellee's con-

tractual and business relationships.[1] We reverse and remand.

For a statement of the facts, see *Caller–Times Publishing Co. v. Triad Communications, Inc.*, 791 S.W.2d 163, 165–66 (Tex. App.—Corpus Christi 1990), *rev'd*, 826 S.W.2d 576 (Tex.1991). In this appeal, the parties primarily contest whether Caller–Times' actions were privileged as legitimate competition.

■ To prove tortious interference with contract, the plaintiff must prove that the defendant willfully and intentionally interfered with a contract, thus proximately causing the plaintiff actual damages. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex.1991); *Juliette Fowler Homes v. Welch Assoc.*, 793 S.W.2d 660, 664 (Tex.1990). To prove tortious interference with prospective contracts or business relationships, the plaintiff must prove that the defendant willfully and intentionally acted to prevent a contractual relationship that the plaintiff had a reasonable probability of realizing, thus proximately causing the plaintiff actual damages. *Exxon Corp. v. Allsup*, 808 S.W.2d 648, 659 (Tex.App.—Corpus Christi 1991, writ denied). Texas law protects existing as well as prospective contracts from interference. A terminable-at-will contract is valid until a party terminates it, and third parties may not tortiously interfere with it. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex.1989).

■ Not every act which interferes with another's contract relations is tortious. A party is privileged to interfere with another's contractual or business relations if 1) he does so in a bona fide exercise of his own rights or 2) his right to the subject matter is equal to or superior to that of the other party. *Victoria Bank & Trust*, 811 S.W.2d at 939; *Sterner*, 767 S.W.2d at 691; *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 107 (Tex.1984). "One may be 'privileged' to assert a claim 'even though that claim may be doubtful, so long as it asserted a colorable legal right.'" *Victo-*

*ria Bank & Trust*, 811 S.W.2d at 939; *Sakowitz, Inc.*, 669 S.W.2d at 107; *Hardin v. Majors*, 246 S.W. 100, 102 (Tex.Civ. App.—Amarillo 1923, no writ). The defense of legal justification or excuse only protects good faith assertions of legal rights. *Victoria Bank & Trust*, 811 S.W.2d at 939; *Sakowitz, Inc.*, 669 S.W.2d at 107, 109.

■ The law affords competitors for the same business some freedom to compete for business which is previously subject to nothing more than a contract terminable at will. *See, e.g., Times Herald Printing v. A. H. Belo Corp.*, 820 S.W.2d 206, 215–16 (Tex.App.—Houston [14th Dist.] 1991, no writ); RESTATEMENT (SECOND) OF TORTS § 768 (1979). A party may cause a third party to terminate a terminable-at-will contract with the party's competitor and may obtain the future benefits for the party's own competitive advantage by offering better contract terms or a higher price. *Times Herald Printing*, 820 S.W.2d at 215 (citing RESTATEMENT (SECOND) OF TORTS § 768 comment i).

RESTATEMENT (SECOND) OF TORTS § 768, "Competition as Proper or Improper Interference," provides:

1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

a) the relation concerns a matter involved in the competition between the actor and the other and

b) the actor does not employ wrongful means and

c) his action does not create or continue an unlawful restraint of trade and

d) his purpose is at least in part to advance his interest in competing with the other.

2) The fact that one is a competitor of another for the business of a third

---

**1.** Appellant raised fourteen points of error on original submission. On remand, we are called upon to address points 13 and 14, addressing the legal and factual sufficiency of the evidence to support the jury finding of tortious interference, and points 7 through 10, addressing the sufficiency of the evidence to support the jury's finding of damages.

person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will.

■■■ The "wrongful means" of § 768(1)(b) include physical violence, fraud, civil suits, and criminal prosecutions, but do not include persuasion or limited economic pressure. RESTATEMENT (SECOND) OF TORTS § 768 comment e. A party may refuse to deal with third persons in the business in which the parties compete because the third persons deal with the competitor; however, a party may not do so in order to establish or maintain an illegal monopoly. *Id.* One who refuses to deal with another in order to establish or maintain an illegal monopoly or for the same purposes intentionally causes third persons not to deal with the other is subject to liability to the other. RESTATEMENT (SECOND) OF TORTS § 768 comment f. Furthermore, the competitive means used must not run afoul of applicable state or federal antitrust legislation. *Id.* Therefore, when a party alleges tortious interference with prospective business relations which are the subject of competition, the party must show he suffered 1) actual damages 2) caused by 3) defendant's intentional acts 4) which interfered with 5) a reasonably probable business relationship and 6) which violated antitrust laws or caused third persons to refuse to deal with the party.

When we review the legal sufficiency of the evidence or a "no evidence" point, we consider only the evidence and reasonable inferences that tend to support the jury findings, and we disregard all evidence and inferences to the contrary. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.,* 774 S.W.2d 666, 668 (Tex.1989). We over-

rule the point and uphold the finding if we find any evidence to support the finding. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989).

■■■ When we review the factual sufficiency of the evidence, we consider and weigh all the evidence which supports or undermines the jury's finding. *Plas–Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). We set aside the verdict only when we find that the evidence standing alone is too weak to support the finding or that the finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

■■■ The jury, instructed that excuse or just cause may exist if the party sought to fairly compete in the marketplace, found that Caller–Times, exerting monopoly power over the relevant market, maliciously interfered with Triad's contractual or business relationships and that Caller–Times targeted Triad's customers and potential customers for special deals. The jury further found such interference to be a proximate cause of injury to Triad's business or property and found actual damages of $365,416.00.

The evidence supports the jury's finding that Caller–Times targeted Triad's customers for special deals.[2] The evidence shows that Triad distributed its advertising circular, "Wheels and Keels," on Thursdays and that Caller–Times offered "Wheels and Keels" advertisers half-price rates for ads on Thursdays in the Caller–Times. Caller–Times presented testimony that the Thursday half-price rate was available to all automobile dealers who advertised with Caller–Times. However, Triad presented evi-

---

**2.** The jury found that Caller–Times maintained its monopoly power in the Corpus Christi market by targeting Triad's customers or potential customers for special deals. This Court affirmed, finding the evidence sufficient to show Caller–Times engaged in predatory pricing. *Caller–Times,* 791 S.W.2d at 170. The Texas Supreme Court reversed, announcing that evidence of the party's subjective intent is not admissible to show predatory pricing and that predatory prices are measured by the party's

average variable cost. *Caller–Times,* 826 S.W.2d at 587–88. The supreme court reversed on the ground that Triad failed to meet the court's newly announced test for antitrust violation by presenting no evidence that Caller–Times set prices below its average variable cost. *Id.* at 588. The supreme court did not address the evidence supporting the jury's finding that Caller–Times targeted Triad's customers or potential customers for special deals.

dence that one automobile dealer in the Corpus Christi market, who did not advertise in "Wheels and Keels" but who spent $5,000 to $10,000 monthly advertising with Caller–Times, did not learn of the special offer directly from Caller–Times. Instead, that dealer's advertising agent learned of the deal from other sources and had to place a telephone call to the Caller–Times to obtain the half-price rate for his client. Triad also presented evidence that there was only one other dealer who did not do business with Triad who received the special Thursday rate. All other dealers who did not do business with Triad "chose" to pay the full rate for Thursday advertisements in Caller–Times. Triad also presented evidence that Caller–Times' advertising salespersons collected commissions on the number of lines of advertising they sold, suggesting that Caller–Times' salespersons would reasonably be expected to publish discounts to all potential customers in order to increase their commissions.

■■■ The jury may believe or disbelieve any or all of the testimony of any witness. *Hipp v. J.D. Lowrie Well Service, Inc.*, 800 S.W.2d 668, 672 (Tex.App.—Corpus Christi 1990, writ denied). The jury could choose to disbelieve the testimony that Caller–Times offered the half-price deal to all of its customers, especially in light of the fact that a non-Triad customer had to learn of the special rate from an independent source and had to request it and that Caller–Times claimed that all but one other non-Triad customer "chose" to pay higher prices for the same services. After reviewing the record, we are unable to state that the jury's finding that Caller–Times targeted Triad's customers for special deals is so against the great weight and preponderance of the evidence that it is manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

Triad produced evidence that one customer, Pagan–Lewis, had contracted to place ads in "Wheels and Keels" for six months. Nevertheless, Triad admitted that all of its customers had contracts that were terminable at will. Since all of the contracts which existed were terminable at will, Caller–

Times was privileged to compete for the contracts subject to the limitation of fair dealing. *Times Herald Printing*, 820 S.W.2d at 215; RESTATEMENT (SECOND) OF TORTS § 768.

■■■ The fact that Caller–Times targeted Triad's customers is not by itself sufficient to establish liability. Such practices are permitted under the competitors' rule. RESTATEMENT (SECOND) OF TORTS § 768 comment b. Liability for tortious interference with a competitor's prospective business relations may only follow where the privilege is punctured by use of wrongful means, the maintenance or establishment of an illegal monopoly, or the absence of any intent to advance a competitive interest.

■■■ Even if Caller–Times desired to eliminate competitors, the evidence shows that Caller–Times was at least partially motivated by competitive interests. The record contains no evidence that Caller–Times resorted to civil process, criminal prosecution, fraud, or physical violence in its attempt to wrest business away from Triad. The jury finding that Caller–Times tortiously interfered with Triad's business relations is supportable only if the evidence shows that Triad suffered actual damages because Caller–Times 1) intentionally acted 2) to prevent a business relationship 3) that Triad had a reasonable probability of realizing and 4) violated state or federal antitrust laws or intentionally caused third persons not to deal with Triad in an attempt to maintain Caller–Times' monopoly power.

The jury found, and the parties do not contest, that Caller–Times held monopoly power over the pertinent market. The Supreme Court of Texas has declared there was no evidence that Caller–Times violated antitrust laws by engaging in predatory pricing. *See Caller–Times Publishing Co.*, 826 S.W.2d at 588. Offering special deals to customers subject to competition is not tortious behavior. Thus, the jury's finding of tortious interference with business relations is supportable only if the evidence is sufficient to show that Caller–Times intentionally caused third persons to refuse to deal with Triad.

■ Triad produced no evidence that Caller–Times offered special deals to Triad's existing customers in exchange for their refusing to continue business with Triad. Triad did produce evidence that, subsequent to the events which precipitated this suit, an employee of another small "shopper" newspaper, who had been a former Caller–Times employee, was told by a Caller–Times advertising salesperson that "he would just offer [her customers] some special half-price deals like [Caller–Times] had for 'Wheels and Keels' and that [she] wouldn't get any business for [her shopper newspaper]." Triad also produced evidence that it attempted to negotiate a contract with Paul York Toyota and that Caller–Times had offered Paul York Toyota special advertising rates in exchange for Paul York Toyota not advertising in "Wheels and Keels." The evidence includes invoices from "Wheels and Keels" detailing ads Paul York Toyota salespersons purchased *after* the alleged interference by Caller–Times and testimony that the volume of Paul York Toyota's advertisements with "Wheels and Keels" was only a small fraction of the amount that Triad had contemplated acquiring from Paul York Toyota.

Triad produced no evidence that it had a reasonable probability of entering into a business relationship with Paul York Toyota that was greater than the one it actually realized. While Triad produced testimony that Caller–Times offered Paul York Toyota special advertising rates in exchange for Paul York not doing business with Triad, Triad failed to produce any evidence that Paul York Toyota actually advertised with Triad before the alleged interference. Triad produced evidence that it was negotiating for Paul York Toyota's business, but that evidence alone is no evidence that Triad had a reasonable probability of entering a contractual relationship with Paul York Toyota. Triad's relationships with other customers are no evidence that Paul York would choose to deal with Triad at a greater level than it actually did. Since there is no evidence that Triad had a reasonable probability of entering into a greater business relationship with Paul York Toyota, Triad did not prove any tortious interference with respect to Paul York's business. We now examine whether evidence that Caller–Times offered a special deal to Paul York in exchange for a refusal to deal with Triad may support a finding that Caller–Times tortiously interfered with other business relationships.

■ A trier of fact may not stack an inference upon an inference. *Briones v. Levine's Dept. Store, Inc.*, 446 S.W.2d 7, 10 (Tex.1969); *Rounsaville v. Bullard*, 276 S.W.2d 791, 794 (Tex.1955); *Ice Bros., Inc.*, 840 S.W.2d 57, 61 (Tex.App.—El Paso 1992, no writ); *J.K. & Susie L. Wadley Research Inst. v. Beeson*, 835 S.W.2d 689, 698 (Tex. App.—Dallas 1992, writ denied). Another small shopper newspaper was warned that Caller–Times would offer half-price deals and that the small shopper newspaper would not get any business. The warning on its face does not state that Caller–Times threatened to commercially induce third parties to refuse to deal. It could mean that Caller–Times would exercise its legitimate competitive option of offering better rates than could smaller newspaper and that advertisers would select Caller–Times for affordability and circulation. A jury could infer the warning indicated that Caller–Times threatened to illegally induce third parties to refuse to deal, but it then must infer from that inference that Caller–Times similarly induced third parties to refuse to deal with Triad. Such an inference from an inference is no evidence.

The jury could infer from direct evidence that Caller–Times offered Paul York Toyota a special advertising rate contingent on a refusal to deal with Triad that Caller–Times made similar offers to many of Triad's prospective customers. From that inference however, a jury may not make the subsequent inference that one of Triad's customers actually accepted such an offer and refused to do business with Triad for no other reason than to obtain a favorable rate from another advertiser.

Finding no evidence that Triad had a reasonable probability of realizing a contractual relationship with Paul York Toyota, and finding no evidence that Caller–

Times intentionally caused any other third person to refuse to deal with Triad, we must conclude the evidence is legally insufficient to establish tortious interference with business relations. We sustain appellant's thirteenth point of error. By finding the evidence legally insufficient to support the finding that Caller–Times tortiously interfered with Triad's business relations, we do not reach the factual sufficiency point of error or the points of error relating to damages.

 Ordinarily, upon sustaining a "no evidence" point, we would reverse and render a decision. However, since, as shown above, Triad's tortious interference with business relations claims depend in part on this state's antitrust laws and since Triad's antitrust action failed only as a result of the new tests announced by the Texas Supreme Court, we believe that the interests of justice compel us to remand Triad's tortious interference with business relations claims to the trial court for a new trial.

We REVERSE the judgment of the trial court and REMAND Triad's tortious interference with business relations claims to the trial court for a new trial.

The Texas Supreme Court ordered us to remand Triad's antitrust claims to the trial court for a new trial, "if requested by Triad." *Caller–Times*, 826 S.W.2d at 589. Accordingly, if in a motion for rehearing Triad so requests, the antitrust claims will also be remanded to the trial court for a new trial.

## OPINION ON MOTION FOR REHEARING

Caller–Times and Triad have filed motions for rehearing in this case. As part of its motion for rehearing, Triad has requested that we remand its antitrust claims to the trial court for a new trial. We grant this request pursuant to the order of the Supreme Court of Texas, *Caller–Times Publishing Co. v. Triad Communications*, 826 S.W.2d 576, 589 (Tex.1992) (opinion on rehearing). In all other respects, we deny the motions for rehearing and confirm the opinion we issued on March 18, 1993.

We REVERSE the judgment of the trial court and REMAND this case to the trial court for a new trial on all of Triad's causes of action.