Michelle P. GRAHAM, Appellant,

v.

MARY KAY INC., Appellee.

No. 14–98–01152–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 20, 2000.

Fritz Barnett, John R. Craddock, John Hart Stevenson, Houston, for appellants.

John Francis McCarty, Dallas, Richard E. Sheehy, Houston, for appellees.

Panel consists of Justices SEARS, LEE, and HUTSON–DUNN.*

### MAJORITY OPINION

ROSS A. SEARS, Justice (Assigned).

Michelle Graham appeals an injunction barring her from selling Mary Kay Cosmetics items at her retail locations. Mary Kay Inc. sought the injunction, arguing Graham could only acquire its products by inducing its sales representatives to

---

* Senior Justices Ross A. Sears, Norman Lee, and D. Camille Hutson–Dunn sitting by as- signment.

breach their distribution agreements with Mary Kay. These agreements prohibit the sale of Mary Kay cosmetics at a "retail" location. The trial court agreed and enjoined Graham from acquiring and selling Mary Kay products in this fashion. In twelve points of error appellant contends the trial court erred both in granting the injunction and in overruling her counterclaims that Mary Kay had tortiously interfered with her business and had sued in bad faith. We affirm.

## FACTS AND PROCEDURAL HISTORY

Appellee Mary Kay Cosmetics is a manufacturer and distributor of cosmetic and toiletry products under its own brand name. It markets its products through "Independent Beauty Consultants," who work out of their homes and sell to customers at a personal level, a marketing scheme successfully pursued by the company since its inception in 1963.

Graham was a Mary Kay beauty consultant. She signed her Independent Beauty Consultant Agreement in 1989, but was terminated in 1991 when the company discovered she was selling Mary Kay cosmetics at a flea market. After her termination, Graham began buying cosmetics from current beauty consultants and selling them at flea markets and from a cart at a Houston mall. Through her contacts with current Mary Kay distributors, Graham also acquired Mary Kay price lists, Mary Kay shopping bags, Mary Kay marketing brochures, and Mary Kay training videos and books, which she admits she used in her retail business.

Mary Kay brought this action to restrain Graham from tortiously interfering with the contracts it has with its beauty consultants (by inducing them to sell her their excess Mary Kay product) and from infringing its trademarks (by using its shopping bags and promotional and training materials). Graham counterclaimed, claiming Mary Kay had violated the Texas Free Enterprise Antitrust Act, tortiously interfered with her business, and that the instant litigation was a sham and constituted abuse of process. She later added a claim for a permanent injunction and attorney's fees. Both sides moved for summary judgment. The trial court granted Mary Kay's motion for summary judgment against Graham's claims and granted a permanent injunction prohibiting her from interfering with the relationship between Mary Kay and its consultants, enjoining her from selling Mary Kay products acquired in this fashion, and banning her from using any Mary Kay trademarked materials in her business.

## STANDARD OF REVIEW

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–549 (Tex.1985). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the nonmovant; every reasonable inference from the evidence will be indulged in favor of the nonmovant, and any doubts will be resolved in his favor. *Nixon*, 690 S.W.2d at 549. A defendant who conclusively negates at least one of the essential elements of each of the plaintiff's causes of action is entitled to summary judgment. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993). If the trial court does not specify a ground on which summary judgment was granted, we will affirm if any of the grounds asserted by the movant are meritorious. *Rogers v. Ricane Enters.*, 772 S.W.2d 76, 79 (Tex. 1989)

When both parties move for summary judgment, the non-prevailing party may appeal the prevailing party's motion as well as its own. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988). Each party must carry its own burden as the movant and, in response to the other party's mo-

tion, as the non-movant. *James v. Hitchcock ISD,* 742 S.W.2d 701, 703 (Tex.App.—Houston [1st Dist.] 1987, writ denied). As we review each of the motions for summary judgment, we indulge all reasonable inferences and resolve all doubts in favor of the non-movant. *University of Tex. Health Science Ctr. v. Big Train Carpet, Inc.,* 739 S.W.2d 792, 792 (Tex.1987). We consider all grounds for summary judgment the movant presented to the trial court when properly preserved for appeal. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996).

We will first consider whether the trial court properly granted Mary Kay relief under the summary judgment proceeding. We will then consider whether the trial court properly denied Graham relief.

## MARY KAY'S CLAIMS

### 1. Tortious Interference

■ The trial court found that Graham had tortiously interfered with Mary Kay's contractual relations with members of its sales force. The elements of such an action are: 1) the existence of a contract subject to interference, 2) the occurrence of an act of interference that was willful and intentional, 3) the act was a proximate cause of the plaintiff's damages, and 4) actual damage has occurred. *Holloway v. Skinner,* 898 S.W.2d 793, 795–796 (Tex. 1995); *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 939 (Tex.1991).

■ Graham first claims Mary Kay failed to show improper interference and proximate cause. We disagree. Under the Mary Kay sales agreement, the beauty consultants did not have the right to sell products to Graham for resale. This was a direct sales organization and consultants sold to the end users, not to persons intending to re-sell the products. By signing the agreement with Mary Kay, the consultants agreed to sell direct to the consumer.

The evidence showed that Graham actively sought current Mary Kay salesper-

sons who were willing to breach this clause in their agreement and sell their products to Graham. Graham knew of this restriction because she had been a beauty consultant, signed an agreement and was terminated for selling cosmetics at a retail location. The summary judgment evidence showed that Graham cajoled these beauty consultants into continuing to sell to her, even after they knew that dealing with Graham was in breach of their agreements. Thus, we find there was ample evidence of willful and intentional interference by Graham, that these acts were essential to Graham's conduct of her business, and that Mary Kay was harmed in its own business and in its manner and method of selling its products.

■ Graham also contends that Mary Kay failed to prove damages. However, under Texas law, actual damage is not required. An injunction may be granted when the employer can provide proof of "probable injury." *Martin v. Linen Systems for Hospitals Inc.,* 671 S.W.2d 706, 709 (Tex.App.-Houston [1st Dist.] 1984, no writ). Such an applicant must show a noncompensable injury for which there can be no real legal measure of damages, or none that can be determined with a sufficient degree of certainty. *Id.* A company's loss of goodwill, clientele, marketing techniques, office stability and the like are not easily assigned a dollar value, but they qualify as "probable injury" for purposes of injunctive relief. *Id.* (quoting *David v. Bache Halsey Stuart Shields, Inc.,* 630 S.W.2d 754 (Tex.App.-Houston [1st Dist.] 1980, no writ). Injunctive relief may also be proper in a case in which actual damages are not. *See, e.g., Seelbach v. Clubb,* 7 S.W.3d 749 (Tex.App.-Texarkana 1999, pet. denied)(affirming injunction where insufficient evidence precluded monetary damages). Because these damages will support injunctive relief, they satisfy the requirement of damages in our case. We find the trial court did not err in granting summary judgment to Mary Kay on its tortious interference cause of action.

■ Graham also argues that Mary Kay's sales agreements are "at-will" contracts, and that she was acting within her legal rights in inducing Mary Kay's beauty consultants to deal with her. We disagree. Third parties may not tortiously interfere with a contract merely because it is an at-will contract. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex.1989); *Caller–Times Pub. Co. v. Triad Communications*, 855 S.W.2d 18, 21 (Tex.App.-Corpus Christi 1993, no writ). Graham's interest was not in inducing Mary Kay salespeople to leave Mary Kay and work for her. Their value to her was their ability to continue to get Mary Kay products from Mary Kay. They could only do that if their contractual relations with Mary Kay were intact. The object of the interference was therefore not in inducing a switch in contractual relations, but in exploiting existing contractual relations to Graham's benefit (and Mary Kay's detriment). We find Graham's claim that she was privileged in her conduct because of the "at-will" status of these contracts is insupportable.

## 2. Unfair Competition/Trademark Violation

■ To establish a claim for unfair competition based on unauthorized use of a trademark or trade name, a plaintiff must show that plaintiff's use of its trade name has acquired a secondary meaning, and that the similarity or use of the mark or name is such that the defendant's use would be likely to confuse the public. *Hudgens v. Goen*, 673 S.W.2d 420, 423 (Tex.App.-Fort Worth 1984, writ ref'd n.r.e.). A secondary meaning means that a trademark identifies a particular producer in the mind of the public. *Hanover Manufacturing Co. v. Ed Hanover Trailers, Inc.*, 434 S.W.2d 109, 111 (Tex.1968). "This protection stems form the basic idea that a trademark or trade name represents the goodwill that has been built up by the energy, time, and money of the user of the mark." *Id.*

■ Graham clearly seeks to be identified with the Mary Kay trademark and to use for personal benefit the goodwill that has been built up by that organization over the years. It is hard to draw another conclusion, given the fact that she used Mary Kay shopping bags, brochures, and training videos in her business. The evidence shows Graham even used a stamp on her frequent customer cards similar to the trademarked Mary Kay rose. There was also testimony that these trappings caused confusion among customers as to whether Mary Kay was ending its long-standing policy against marketing its products through retail establishments, and left some customers with the belief that Graham was operating a "Mary Kay outlet store."

Graham seeks to defeat this claim by arguing that, because she was selling genuine Mary Kay merchandise, she is insulated from liability. We disagree. Federal courts have found that distributors selling genuine merchandise may nevertheless misappropriate a manufacturer's trademark if its use of the trademark could have the effect of misleading the public as to its relationship with the manufacturer. *Bandag Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903, 911 (Fed.Cir. 1984); *Stormor v. Johnson*, 587 F.Supp. 275 (W.D.Mich.1984). Here, Graham intended to trade on the goodwill and marketing methods built up by Mary Kay over the years for her personal profit. We find that Mary Kay established its claim of unfair competition and unauthorized utilization of the Mary Kay trademark. Therefore the trial court did not err in granting summary judgment.

## 3. Injunctive relief

■ Graham also contends the trial court erred in granting Mary Kay permanent injunctive relief. Injunctive relief is proper where the applicant can demonstrate: 1) the existence of a wrongful act; 2) the existence of imminent harm; 3) the existence of irreparable injury; and 4) the absence of an adequate remedy at law.

*Hues v. Warren Petroleum Co.,* 814 S.W.2d 526, 529 (Tex.App.-Houston [14ᵗʰ Dist.] 1991, writ denied). Injunctive relief is an appropriate remedy when a claim of tortious interference is involved. *Transcontinental Gas Pipe Line Corp. v. American Nat'l Petroleum Co.,* 763 S.W.2d 809, 823 (Tex.App.-Texarkana 1988), *rev'd on other grounds,* 798 S.W.2d 274 (Tex.1990).

Graham's complaints about the injunction are predicated on a claim that Mary Kay did not establish the existence of a wrongful act. Because we have found that Mary Kay did establish wrongful acts, we overrule Graham's fifth and sixth points of error.

## GRAHAM'S COUNTERCLAIMS

Having found that summary judgment granting injunctive relief for Mary Kay was proper, we turn now to the question of whether the trial court properly denied Graham's motion for summary judgment.

First, Graham contends that Mary Kay's pricing structure constitutes vertical price maintenance, which is a *per se* violation of the antitrust laws. *See, e.g., Dr. Miles Medical Co. v. John D. Park & Sons,* 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911). We disagree. Mary Kay's contracts do not regulate resale price, and there is no competent evidence in this record that Mary Kay engages in resale price maintenance.

Secondly, Graham contends Mary Kay is seeking to restrain competition. She contends Mary Kay's actions constitute a group boycott, or, alternatively, that this lawsuit constitutes a restraint of trade which violates the Texas Free Enterprise and Antitrust Act, TEX. BUS. & COM.CODE ANN. § 15.01 *et seq.* (Vernon 1987). We will take each of these in turn.

### 1. Group Boycott

Graham alleges that Mary Kay's actions toward her constituted a group boycott, or that the lawsuit brought in bad faith solely to put her out of business.

Those who petition government for redress are generally immune from antitrust liability. *See generally Eastern Railroad Presidents Conference v. Noerr Motor Freight,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). Such petitioning includes resorting to the courts and to administrative bodies. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d, 642 (1972). However, a competitor may not resort to "sham" litigation in order to hinder another competitor. *Id.* at 512, 92 S.Ct. 609. "Sham" litigation has a two-part definition. First, the lawsuit must be objectively baseless "in the sense that no reasonable litigant could realistically expect success on the merits," and a reviewing court must make this determination before proceeding to the second part. *Prof. Real Estate Investors Inc. v. Columbia Pictures Indus.,* 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) (quoting *Noerr,* 365 U.S. at 144, 81 S.Ct. 523). Second, the court must focus on whether the baseless lawsuit conceals an attempt to interfere with the competitor's business by using the "governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Id.* at 61, 113 S.Ct. 1920 (quoting *Columbia v. Omni Outdoor Advertising Inc.,* 499 U.S. 365, 380, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991). In other words, a plaintiff must disprove the challenged lawsuit's legal viability before the court will entertain evidence of the suit's *economic* viability. *See Prof. Real Estate Investors,* 508 U.S. at 61, 113 S.Ct. 1920.

We have already determined that Mary Kay's suit was not objectively baseless. Accordingly, we find that Mary Kay was insulated from antitrust liability.

Similarly, the tort of malicious prosecution requires a showing that Mary Kay lacked probable cause to institute the instant proceedings. In such a claim, the defendant benefits from a presumption of good faith in instituting the proceeding,

and appellant bore the burden of presenting evidence establishing a lack of probable cause. *Akin v. Dahl,* 661 S.W.2d 917, 920 (Tex.1983). The trial court did not err in finding that appellant's summary judgment proof failed to overcome this presumption.

### 2. Conspiracy

Civil conspiracy is "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983). Appellant's civil conspiracy claim hinges on her assertion that Mary Kay's conduct in bringing the instant suit was wrongful. Because we have found Mary Kay's suit was not wrongful, and that her purpose was lawful, appellant's claim for civil conspiracy cannot be sustained.

### 3. Abuse of Process

Graham also contends that Mary Kay's filing of this lawsuit constitutes an abuse of process. We disagree. Three elements comprise the tort of abuse of process: (1) the defendant made an illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process; and (3) damage to the plaintiff as a result of such illegal act. *Bossin v. Towber,* 894 S.W.2d 25, 33 (Tex. App.—Houston [14th Dist.] 1994, writ denied). The critical aspect of this tort is the improper use of the process after it has been issued. *Id.* When the process is used for the purpose for which it was intended, even though accompanied by an ulterior motive, no abuse of process occurs. *Baubles & Beads v. Louis Vuitton, S.A.,* 766 S.W.2d 377, 378–378 (Tex.App.-Texarkana 1989, no writ).

Appellant's claim for abuse of process rests on her own affidavit, in which she stated that she would have expanded if it were not for the uncertainty of her supply of Mary Kay products. She does not tell us how the process was maliciously used in the instant case.

Moreover, because her malicious prosecution and abuse of process claims fail, her claim for injunctive relief also fails. We find the trial court did not err in granting summary judgment on this cause of action and overrule appellant's point of error.

### 4. Slander

Appellant also contends agents of Mary Kay committed slander *per se* against her by telling customers at the mall that she a) had acquired the products she sold illegally; b) that Mary Kay was suing her; and c) that Mary Kay was going to have her put in jail.

In order to be actionable without proof of damage, slander must fall into one of four categories: imputation of a crime, imputation of a loathsome disease, injury to a person's office, business, profession or calling, or imputation of sexual misconduct. *Villasenor v. Villasenor,* 911 S.W.2d 411, 418 (Tex.App.-San Antonio 1995, no writ). In her brief and in the affidavit attached to her pleadings, appellant contends Mary Kay sales directors and beauty consultants told her customers that she had acquired the product illegally and that Mary Kay was suing her and was going to put her in jail. These allegations, if true, would be sufficient to raise a fact issue as to whether appellant was slandered by agents of Mary Kay. *See id.;* RESTATEMENT (2D) OF TORTS § 571, cmt. c (1976). The question then becomes whether Mary Kay can be held vicariously liable for the actions of its "agents" in this instance.

Without a showing of affirmative action by Mary Kay which led plaintiff to believe its beauty consultants were its employees, Mary Kay not liable for the torts of its independent contractors. *Baptist Mem. Hospital Sys. v, Sampson,* 969 S.W.2d 945, 949 (Tex.1998).

Appellant argues that, by failing to disavow the actions of its agents, Mary Kay

ratified their conduct and can be held liable for it. But appellant does not show what affirmative steps Mary Kay took to clothe its sales force in apparent authority for the statements they were making. Also, in her deposition appellant said her only claims against Mary Kay are related to the filing of the instant suit. Thus we find the trial court did not err in granting summary judgment on appellant's slander claim.

## CONCLUSION

We find the trial court did not err in granting summary judgment and injunctive relief in favor of Mary Kay Inc. The judgment of the trial court is affirmed.

Justice HUTSON–DUNN's concurring and dissenting opinion to follow

D. CAMILLE HUTSON–DUNN, Justice (Assigned), concurring and dissenting.

Because I believe the trial court improperly resolved questions of credibility in this summary judgment proceeding, and did not apply the standard of review normally accorded a nonmovant in a summary judgment proceeding, I respectfully dissent.

Under our summary judgment standard, we take all evidence favorable to the nonmovant as true and indulge every reasonable inference in the nonmovant's favor. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996). I believe there are at least two instances in which a fact issue arose in this proceeding and which should have precluded summary judgment.

While the judgment recites that the parties stipulated there was no issue of fact, there is no written agreement or stipulation to guide us. With no agreement to guide us, we will presume the agreed-upon facts are the ones provided by the parties in the appellate record. And this record is rife with conflicting facts.

First, in her deposition testimony appellant asserted that all she ever did was advertise in a local shoppers' publication that she would buy Mary Kay merchandise. If true, this would not constitute tortious interference because she would have an equal or superior right to the subject matter of the agreement. *See Victoria Bank & Trust v. Brady,* 811 S.W.2d 931, 939 (Tex.1991); RESTATEMENT (SECOND) OF TORTS § 766 and comments m and n (1979). Appellant also acknowledged ordering products directly from Mary Kay, but this was with the approval of Michelle Ogden, a marketing director who supplied appellant with her account number and the numbers of consultants under her. In any case, once the products were purchased, Mary Kay had no further interest in them. *See Dr. Miles Medical Co. v. John D. Park & Sons Co.,* 220 U.S. 373, 409, 31 S.Ct. 376, 55 L.Ed. 502 (1911). Viewed in the light most favorable to appellant, I believe this testimony was sufficient to raise a fact question as to whether or not there was tortious interference on the part of Graham.

Second, deposition testimony shows that a meeting was held between outside counsel for Mary Kay and members of Mary Kay's independent sales force who had complained about appellant's activities. Although the witness forgot what was said at that meeting, the record contains letters from directors and beauty consultants to the mall manager where appellant had set up shop, urging the mall to terminate her lease. I believe that a reasonable inference should have been indulged that Mary Kay was in fact coordinating and sanctioning this activity, precluding summary judgment on appellant's tortious interference counterclaim.

Finally, I am not convinced that the law on trademark is on Mary Kay's side. The evidence in favor of the nonmovant shows that appellant dealt only in products which Mary Kay sold to its independent sales force. This includes shopping bags and beauty books which Ogden purchased from Mary Kay and which Ogden sold to appellant. Under the first sale doctrine, once a trademark owner sells his product, the buyer ordinarily may resell the product

under the original mark without incurring any trademark liability. *NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9 th Cir.1987). Furthermore, the first sale doctrine applies even when consumers may erroneously believe the reseller is affiliated with or authorized by the producer. *Sebastian Int'l v. Longs Drug Stores*, 53 F.3d 1073 (9 th Cir.1995). I believe appellant may thus be immunized from trademark liability for dealing in items which were sold by Mary Kay. I agree, however, that appellant can be enjoined from using the trademark Mary Kay rose.

Mary Kay's recourse is against the sales directors and beauty consultants who chose to supply appellant with products. Because the majority holds otherwise, I respectfully dissent.