

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00372-CV

IN RE MICHAEL ROCKAFELLOW;
MTBC, LTD. AND TBC WAREHOUSE, INC., RELATORS

_____

April 30, 2013

## DISSENTING OPINION

### Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

I respectfully dissent from the majority opinion. My disagreement lies in affording judicial protection or privilege to a list primarily developed for furthering one's monetary interest in helping others violate their contractual obligations.

Texas Rule of Evidence 507 affords one ". . . a privilege . . . to refuse to disclose and to prevent other persons from disclosing a trade secret owned by the person, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice." Controlling at bar is that language of Rule 507 obligating the court to interject concepts of fraud and injustice into its determination of whether a purported secret merits secrecy. Moreover, it is this portion of Rule 507 that the court in *John Paul Mitchell Sys. v. Randalls Food Mkts., Inc.,* 17 S.W.3d 721 (Tex. App.–Austin 2000, pet. denied)

utterly failed to mention. This causes me concern since the majority here relies most heavily on *Paul Mitchell* in reaching the conclusion it does. The rather obvious omission by the Austin panel tends to strip its conclusion (*viz* the nature of the information being trade secrets) of all persuasiveness here.

Furthermore, the blind application of the six factors in *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003) could well lead to the conclusion that lists of illicit drug manufacturers, carriers, and buyers developed by one engaged in the business of drug trafficking are trade secrets. Such data could easily be characterized as a "compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it." *Id.* at 739, quoting *Computer Assocs. Int'l. v. Altai,* 918 S.W.2d 453, 455 (Tex. 1996) (so defining a trade secret). Obviously, such compilations would be generally unknown to the public and outside the particular drug operation involved, often kept secret from those within the chain of command, guarded under penalty of death, and of high value and not easily discovered or acquired by others. Yet, no one can reasonably suggest that the law should protect them from disclosure merely because they liken to trade secrets. Directing that they remain secret from those victimized by the misconduct and seeking to eradicate it works an injustice, even if the misconduct generates millions or billions of dollars.

The purported secret at bar is a list of businesses from which Rockafellow obtains SalonQuest products without the approval of SalonQuest and in violation of the contractual provisions between SalonQuest and those in its selected chain of distribution. What we have before us is a scheme adopted by Rockafellow through which he compensates others for selling him products while knowing that the seller is

2

contractually prohibited from selling them to him. Rockafellow then resells the products outside the distribution chain SalonQuest established and contractually endeavored to maintain. That breaching one's contractual obligations is a legal wrong cannot be doubted. Similarly true is that involvement by a third party in that breach may also be a civil wrong. *See Graham v. Mary Kay, Inc.*, 25 S.W.3d 749 (Tex. App.–Houston [14th Dist.] 2000, pet. denied) (wherein Graham was enjoined from engaging in a similar scheme to that of Rockafellow since Graham tortiously interfered with Mary Kay's contracts and distribution chain). Much depends upon the circumstances involved. *See also John Paul Mitchell Sys. v. Quality King Distribs., Inc.,* 106 F. Supp.2d 462 (S.D.N.Y. 2000) (wherein the conduct failed to arise to the level of tortious interference since there was no evidence that the diverter induced the breach). And, whether the circumstances at bar will ultimately result in Rockafellow being held liable for tortious interference with SalonQuest's contracts is unknown. But that matters not at this juncture for several reasons.

First, the parties are engaged in discovery in preparation for trial. To guess about the trial's outcome and use that guess as a means of precluding discovery is untenable. That Rockafellow may be a tortfeasor depending on how he secured the product merits discovery of the identity of those who violated their contractual obligations to SalonQuest.

Second, and more importantly, the information sought is the identity of those violating their contractual obligations to SalonQuest. Rockafellow desires to keep their identities secret for he knows that if they are discovered his ability to reap the benefits of their misconduct will be hampered. He admitted as much during his testimony at the

3

hearing on SalonQuest's motion to compel discovery of the lists.  When asked if the data was shared ". . . with other individuals or is it something that you keep to yourself," Rockafellow replied:  "Keep to myself."  When asked why, he said, "[b]ecause if I share my information, I am going to lose that supplier. If I lose that supplier, I am not going to have any product to sell."[1]  So, the moniker of trade secret is being invoked as a means of hiding those who engage in legally actionable conduct so further profit can be gained from that known misconduct.

Now, the concept of fraud can be rather amorphous.  We recognized as much in *McEwin v. Allstate Tex. Lloyds*, 118 S.W.3d 811 (Tex. App.–Amarillo 2003, no pet.) when saying that "[f]raud is multiform and as such admits of no single, all-encompassing definition."  *Id.* at 816.  Yet, its "gist" consists of "successfully using cunning, deception *or artifice to cheat another to the other's injury*."  *Id.* (emphasis added).  It also encompasses, in its historical sense, conduct breaching a legal duty causing injury to another or "the taking of an undue and unconscientious advantage."  *Cotten v. Weatherford Bancshares, Inc.,* 187 S.W.3d 687, 702 (Tex. App.–Fort Worth 2006, pet. denied).  More ephemeral is the idea of "injustice."  Its lack of definition within Rule of Evidence 507 only hampers one's ability to assess its parameters.  Nonetheless, it is commonly described as the violation of the rights of others or as an unjust or unfair action or treatment.  *See* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 602 (10th ed. 1995).  Intentionally breaching one's contractual obligations transgresses the civil law.  Inducing one to do so is a tort also considered unacceptable by our laws.  Labeling

---

[1]He would most likely lose that supplier because either 1) SalonQuest would undertake effort to cause that supplier to abide by the terms of its contract and sell its product only within the contractual distribution chain or 2) the supplier would not want to risk being discovered that it is breaching contractual restrictions imposed by SalonQuest if its identity were shared haphazardly.

information about the identity of those involved in what the law disapproves as privileged is nothing short of an artifice to further cheat those whose contractual rights were denied them. It perpetuates the violation of those contractual rights. It is enough that Rockafellow willingly participates in and fosters such misconduct, he is now trying to hide it for his own profit. I will not further or otherwise protect those involved in the scheme by using the law to classify their identity as a trade secret.

That the misconduct involves an industry generating large sums of money is of no import, though the majority suggests otherwise.[2] And while industry and the marketplace should regulate themselves (as suggested by the majority), history shows that they fall short of that goal at times. When they do and when their conduct violates legal principles, it is the court's duty to uphold those principles. Simply put, no one is above the law, even if large sums of money are involved. So, saying that "[t]he courts are not in the business of deterring diversion" (as the majority does here) is unacceptable when 1) aspects of that business indisputably run afoul of legal principles (*i.e.* the law of contracts) and 2) all involved thrive off the willingness of indispensable parties (*i.e.* suppliers) to violate those same principles.

A list that does nothing other than disclose the identity of those violating SalonQuests contractual rights is not a trade secret. And to recognize Rockafellow's purported claim simply so he can take advantage of those violations and continue to

---

[2]I refer to that portion of the majority opinion stating:

Though SalonQuest has suggested that this case involves Rockafellow's immoral practice of interrupting the authorized or preferred distribution channel by tempting distributors or salons to provide him the products, it appears that the diversion industry is a highly developed, widely recognized, and multi-million-, perhaps multi-billion-, dollar industry. In other words, this is big business. And Rockafellow is not the only one involved in this business; he testified that there are ten or eleven major competitors in the diversion industry nationwide.

reap a profit to SalonQuest's detriment is an injustice, if not a fraud upon SalonQuest and the law, under Rule 507.  Thus, I dissent from the majority opinion.


Brian Quinn
Chief Justice